UNITED STATES of America,
Plaintiff–Appellee,

v.

Philbert Ray SMITH,
Defendant–Appellant.

No. 89–8226

Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

July 31, 1990.

W. Douglas Adams, Brunswick, Ga. (Court-appointed), for defendant-appellant.

Kathryn M. Aldridge, Asst. U.S. Atty., Savannah, Ga., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, CLARK, Circuit Judge, and HENDERSON, Senior Circuit Judge.

TJOFLAT, Chief Judge:

Philbert Ray Smith appeals from an order of the district court revoking his probation and sentencing him to a term of incarceration. We vacate Smith's sentence and remand the case to the district court for resentencing.

## I.

On August 15, 1988, Smith pled guilty to an information charging him with possession of counterfeit United States currency in violation of 18 U.S.C. § 472 (1988), for which the maximum statutory term of imprisonment is fifteen years. Because the offense occurred after November 1, 1987, Smith's sentence was governed by The Sentencing Reform Act of 1984, Pub.L. No. 98–473, 98 Stat. 1987 (codified, as amended, in scattered sections of 18 and 28 U.S.C.), and the sentencing guidelines promulgated thereunder, *see* United States Sentencing Commission, Guidelines Manual (West Nov. 1989) (hereinafter Sentencing Guidelines). Under the guidelines, the base offense level for offenses involving counterfeit currency is 9. *See id.* § 2B5.1(a). In his presentence investigation report, to which neither party objected, the probation officer adjusted the offense level upward by two levels based on defendant's role as an organizer of the two-person scheme to pass counterfeit bills, *see id.* § 3B1.1(c), and downward by two levels based on his acceptance of responsibility, *see id.* § 3E1.1(a), for a total offense level of 9. The probation officer placed Smith in Criminal History Category I. The applicable sentencing range, therefore, was from four to ten months of imprisonment, *see id.* ch. 5, pt. A sentencing tbl. & commentary. Because the minimum term of imprisonment specified by the sentencing table was between one and six months, Smith was eligible for probation provided he served a term of community confinement. *See id.* §§ 5B1.1, 5C2.1(c)(2), 5C2.1(e)(2). On November 21, 1988, the district court implicitly adopted the probation officer's guideline application and imposed a sentence of three years' probation,[1] with four months to be spent at a community treatment center, on the condition that, *inter alia,* Smith remain drug-free.

Smith entered the Chatham County Community Treatment Center in December 1988. Two drug tests administered while Smith was at the Center revealed the presence of drugs in his urine. Smith was expelled from the Center after the second test, and his probation officer petitioned the court for revocation of Smith's probation. The probation officer appended to the petition a report on Smith's conduct while on probation and recommended a new sentence of eighteen months' imprisonment followed by a two-year term of supervised release. The recommended sentence was calculated by applying the sentencing guidelines as follows:

| | | |
|---|---|---|
| Total offense level for the offense of conviction: | | 9 |
| Base offense level for the conduct that violated probation:[2] | + | 4 |
| Adjustments: | +/− | 0 |
| TOTAL: | | 13 |
| Criminal History Category: | | I |
| Applicable Guideline Range: | | 12–18 months |
| Sentence Recommendation: | | 18 months |

On March 6, 1989, the district court held a hearing and revoked Smith's probation. The court correctly noted that the guidelines do not specify how a court is to proceed after revoking a guideline sentence of probation, *see id.* ch. 7, then stated: "[T]here being no guidelines [on resentencing after probation revocation], the Court then reverts to the statutory maximum for the underlying offense, in this case possession of counterfeit bills. The maximum punishment prescribed by statute for that is fifteen years." The court then implicitly adopted the probation officer's recommendation and imposed a prison term of eigh-

---

1. Under the Comprehensive Crime Control Act of 1984, probation is a type of sentence in and of itself. *See* 18 U.S.C. § 3561 (1988); S.Rep. No. 225, 98th Cong., 2d Sess. 88, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3271. Under prior law, the court would either (1) suspend the *imposition* of sentence and put the defendant on probation, or (2) impose a prison sentence, suspend its *execution,* and put the

defendant on probation. *See* 18 U.S.C. § 3651 (1982) (*repealed* 1986).

2. *See* Sentencing Guidelines § 2D2.1(a)(3) (base offense level of 4 for possession of controlled substances not covered specifically by other subsections).

teen months followed by a period of supervised release not to exceed three years.

## II.

In this case of first impression for the circuit courts of appeals, Smith argues that the district court erred (1) in holding that the guidelines do not apply to probation revocation proceedings and (2) in imposing a prison sentence (eighteen months) that exceeds the one originally available under the guidelines at the time of initial sentencing (four to ten months). We agree.

The statute governing probation revocation provides in relevant part:

(a) Continuation or Revocation.—If the defendant violates a condition of probation at any time prior to the expiration or termination of the term of probation, the court may, after a hearing pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure, and after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable—

(1) continue him on probation, with or without extending the term [or] modifying or enlarging the conditions; or

(2) revoke the sentence of probation and *impose any other sentence that was available under subchapter A [18 U.S.C. §§ 3551–3559] at the time of the initial sentencing.*

18 U.S.C. § 3565 (1988) (emphasis added).[3]

At the time of Smith's initial sentencing, the district court was required to apply the guidelines. Thus, the guidelines, as well as the statutory maximum for the offense of conviction, determined what sentences were "available" at that time. Before the district court could impose a proper sentence under the guidelines, it had to make findings of fact concerning Smith's total offense level and criminal history category, which it did by adopting the findings in the probation officer's original report without

objection from either party. Naturally, the facts established at the time of initial sentencing could include only conduct that had already occurred. Because the conduct that constituted a probation violation had not yet occurred, no upward adjustment in Smith's total offense level could have been based on that conduct, and the longer sentence of imprisonment resulting from such an adjustment was therefore not "available." Thus, pursuant to section 3565, the guidelines control the imposition of a new sentence after probation revocation in the sense that the original determinations of total offense level and criminal history category, based upon relevant facts established at the time of sentencing, delimit the sentences that were then available. The probation officer's use of the guidelines—adding the base offense level for the post-sentencing conduct that violated probation to the total offense level for the offense of conviction—was clearly incorrect in light of section 3565.

■ The relevant facts before the court at the time of initial sentencing also determine whether and to what extent the district court may depart from the guidelines after probation revocation. If at that time the court had before it information that would have justified a departure, the court may revisit those facts and, based upon them, may choose to depart when imposing the new sentence. In such a case, the sentence departing from the guidelines was *available* at the time of initial sentencing, although the court did not at that time choose to depart or even to identify the information that supported a possible departure. The proper extent of the departure (subject to the statutorily prescribed sentencing range) depends, of course, upon the relevant sentencing facts originally before the court rather than on the conduct that constituted the probation violation.

■ This is not to say that post-sentencing conduct is irrelevant to probation

---

**3.** Section 3565, as amended in 1988, requires revocation when a defendant on probation is found to be in possession of a controlled substance. *See* 18 U.S.C. § 3565(a). The terms of the amendment apply only to persons whose

probations began after December 31, 1988, however, and therefore do not apply to this case. *See* Pub.L. 100–690, title VII, § 7303(d), 102 Stat. 4181, 4464.

revocation proceedings. Where revocation is not mandatory,[4] the district court may certainly consider such conduct when deciding whether to revoke probation or to continue it, either on the same or different terms, *see id.* §§ 3563(c), 3565(a)(1). Furthermore, after revoking probation, the district court has discretion to impose a new sentence *within* the applicable range prescribed by law, *i.e.,* statute and guidelines, at the time of initial sentencing—in this case, within a range of four to ten months. Common sense suggests that the court ought to be able to consider the conduct giving rise to revocation (*i.e.,* post-sentencing conduct) in deciding what sentence to select within the guideline range or even whether to depart from the guidelines, provided the conduct justifying departure (*i.e.,* pre-sentencing conduct upon which departure could have originally been based) was brought to the court's attention at the initial sentencing hearing. Similarly, where a term of supervised release is discretionary, *see* Sentencing Guidelines § 5D1.1(b), the court ought to be able to consider the probation violation in deciding whether to impose such a term. And whether supervised release is discretionary or mandatory, *see id.* § 5D1.1(a), the court should be able to consider the violation in determining the conditions, and, within the range prescribed by law, the duration of the term, *see id.* § 5D1.2.

■ In the case at hand, the district court's imposition of a three-year term of supervised release fell within the applicable sentencing range for a Class C felony. *See id.* § 5D1.2(b)(2) (offense is Class C felony if statutory term is from ten to twenty-five years). Supervised release is mandatory, however, only if a prison sentence of more than one year is imposed, *see id.* § 5D1.1(a); in such cases as the one at hand, where the applicable prison sentence is less than one year, the court has discretion with respect to supervised release, *see id.* § 5D1.1(b). In view of the court's erroneous imposition of a sentence exceeding one year, we cannot know whether the court would have imposed a term of super-

vised release had it exercised its discretion in the matter. Therefore, on remand, the district court should decide not only where to sentence Smith within the four- to ten-month range but also whether to impose a term of supervised release, and, if the court so decides, its duration. For these purposes, the court may consider Smith's conduct on probation.

### III.

For the foregoing reasons, we vacate Smith's sentence and remand the case to the district court for resentencing consistent with this opinion.

VACATED and REMANDED.

---

**4.** *See, e.g., supra* note 3; Sentencing Guidelines § 7A1.2(a).