**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Hassan Mohammed ALLI, Jr., Defendant–Appellant.**

**No. 90–5482.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 6, 1990.

Decided April 9, 1991.

As Amended May 6, 1991.

James B. Craven, III, Durham, N.C., for defendant-appellant.

Benjamin H. White, Jr., Asst. U.S. Atty., argued, Greensboro, N.C. (Robert H. Edmunds, Jr., U.S. Atty., Greensboro, N.C., on the brief), for plaintiff-appellee.

Before WIDENER and CHAPMAN, Circuit Judges, and NORTON, United States District Judge for the District of South Carolina, sitting by designation.

CHAPMAN, Circuit Judge:

This appeal presents the question of whether upon revocation of probation and resentencing a defendant may be sentenced to a term of active prison confinement in excess of the guideline range applicable to the defendant at the time of his initial sentencing. We find that on the present facts he may not be, and we vacate the sentence and remand for resentencing.

I

On August 24, 1989, appellant Alli was sentenced to a term of probation for three years following a guilty plea for breaking into a United States Post Office building. As a condition of probation, appellant was to serve six months in a community treatment center. The court recommended Troy House in Durham, North Carolina and Alli entered Troy House on September 21, 1990. It was a condition of probation that the appellant not possess any narcotic or controlled substance. At the time of this sentence, the guideline range for appellant's offense, a Class D Felony with an offense level of 10 and a criminal history category of I, was six to twelve months.

Alli was scheduled to complete his six months in Troy House on March 20, 1990, but he was terminated from Troy House on February 5, 1990 because of numerous infractions and violations of the policies of that institution. By urinalysis on February 2, 1990 and March 5, 1990, he tested posi-

tive for cocaine. He was returned to the district court on April 4, 1990 upon petition of the probation officer alleging a violation of the terms of his probation.

Following a hearing, at which appellant was represented by counsel, the court found that Alli had violated the terms and conditions of his probation. The court revoked his probation and sentenced him to a period of 15 months in the custody of the Bureau of Prisons, plus a term of three years supervised release upon his completion of the term in custody. Alli spent 138 days in Troy House, September 21, 1989 to February 5, 1990, and he spent 51 days in custody, March 15, 1989 to May 4, 1989, following his original arrest.

## II

Appellant contends that the district court erred in its sentence of 15 months confinement following the revocation of his probation, because under 18 U.S.C. § 3565(a)(2) [1] it was restricted to a sentence "that was available under subchapter A at the time of the initial sentence," which was the sentence imposed on August 24, 1989. Subchapter A is obviously subchapter A of Chapter 227, of Title 18, United States Code, which is entitled "Sentences" and found in 18 U.S.C. §§ 3551–3559. Appellant claims that the guideline range was six to twelve months on August 24, 1989, the date he was originally sentenced, and because no evidence was presented on that date which would justify an upward departure from the guideline range, the maximum sentence upon revocation of Alli's probation must be not more than twelve months.

Appellant argues another approach that would also result in a sentence of twelve months upon revocation of his probation. The appellant twice tested positive for cocaine prior to the revocation of his parole. This was in violation of the mandatory condition of his probation as set forth in the terms of his probation, as required by 18 U.S.C. § 3563(a)(3),[2] and that he not possess an illegal controlled substance. Since appellant obviously violated this provision of his probation, he claims that the last sentence of § 3565(a) requires revocation of probation and a sentence of not less than one-third of the original sentence. His original sentence was three years probation, and one-third of this term would be one year, which is also the maximum provided by the guidelines.

The government argues that reapplication of the initial guideline range (six to twelve months) upon revocation of probation would be inappropriate, because the initial guideline did not take into account the probation violation. Therefore, since no guideline was in effect to cover a violation of probation, it is necessary to look to § 3553(b) and impose an appropriate sentence "having due regard for the purposes set forth in subsection (a)(2)" [3] and that any

---

1. **18 U.S.C. § 3565. Revocation of probation (a) Continuation of revocation.**—If the defendant violates a condition of probation at any time prior to the expiration or termination of the term of probation, the court may, after a hearing pursuant to Rule 32.1 of the Federal Rules of Criminal procedure, and after considering the factors set forth in section 3553(a) to the extent that they are applicable—

   (1) continue him on probation, with or without extending the term or modifying or enlarging the conditions; or

   (2) revoke the sentence of probation and impose any other sentence that was available under subchapter A at the time of the initial sentencing.

   Notwithstanding any other provision of this section, if a defendant is found by the court to be in possession of a controlled substance, thereby violating the condition imposed by section 3563(a)(3), the court shall revoke the sentence of probation and sentence the defendant to not less than one-third of the original sentence.

2. **§ 3563. Conditions of probation**

   (a) **Mandatory conditions.**—The court shall provide, as an explicit condition of a sentence of probation—

   \* \* \* \* \* \*

   (3) for a felony, a misdemeanor, or an infraction, that the defendant not possess illegal controlled substances.

3. **18 U.S.C. § 3553. Imposition of a sentence**

   (a) **Factors to be considered in imposing a sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in

sentence within the statutory limit should not be disturbed unless the trial judge had abused his discretion. *United States v. Schocket*, 753 F.2d 336, 341 (4th Cir.1985).

There is a flaw in the government's argument. The language of § 3565(a)(2) is clear. When probation given under a guideline sentence is revoked, the court is limited at resentencing to a sentence that was available at the time of the original sentence. There is no dispute that the guidelines were applicable at the time of the original sentence, and that the guideline range was six to twelve months. There was no evidence presented at the initial sentencing that would justify an upward departure. We reject the government's argument that the only constraint upon the sentencing court was the statutory maximum of five years. This ignores the clear language of § 3565(a)(2) and also of § 3553(b) which requires that a court impose a sentence within the guideline range unless it finds aggravating or mitigating circumstances which have not adequately been taken into consideration by the Sentencing Commission in formulating the guidelines. The position of the government also ignores the U.S.S.G. policy statements found in Chapter Seven of U.S.S.C. Guidelines Manual.

Although the United States Sentencing Commission has not yet established guidelines for use in cases of violation of probation, it has issued a policy statement effective November 1, 1990[4] concerning revocation of probation. The Commission is authorized by 28 U.S.C. § 994(a)(3) to issue such policy statements, and it has stated that use of a policy statement will allow it to evaluate this complex area after it has had the benefit of additional time, experience, comment and use.

In considering different approaches to sanctioning violations of probation and supervised release, the Commission was faced with two choices. The first option was to consider the violation as a breach of trust, and the second was to sanction violators as if the conduct was being sentenced as new federal criminal conduct. The Commission adopted the breach of trust approach and stated:

> While the nature of the conduct leading to the revocation would be considered in measuring the extent of the breach of trust, imposition of an appropriate punishment for any new criminal conduct would not be the primary goal of a revocation sentence. Instead, the sentence imposed upon revocation would be intended to sanction the violator for failing to abide by the conditions of the court ordered supervision, leaving the punishment for any new criminal conduct to the court responsible for imposing the sentence for that offense.

In further explanation of its use of this approach, the Commission stated:

> [A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator.

U.S. Sentencing Guidelines Manual, Chapter 7, Part A, Introduction 3(b).

In the policy statement the Commission set forth suggested classification of violations, rules for revocation of probation or supervised release and suggested terms of imprisonment. Section 7B1.1 provides:

**Classification of Violations (Policy Statement)**

(a) There are three grades of probation and supervised release violations:

---

determining the particular sentence to be imposed, shall consider—

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

4. Although Alli was resentenced prior to November 1, 1990, the policy statement is useful in the case because it reflects the thinking of the U.S. Sentencing Commission in an area which it has not yet addressed with applicable guidelines.

(1) *Grade A Violations*—conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device of a type described in 26 U.S.C. § 5845(a); or (B) any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years;

(2) *Grade B Violations*—conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year;

(3) *Grade C Violations*—conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision.

The Application Note 3 to this section indicates that a "controlled substance offense" does not include simple possession of a controlled substance, and Application Note 5 to § 7B1.4 advises: "The Commission leaves to the court the determination of whether evidence of drug usage established solely by laboratory analysis constitutes 'possession of a controlled substance' as set forth in 18 U.S.C. §§ 3565(a) and 3583(g)."

From the information contained in the petition to revoke Alli's probation, and the findings made by the court in ordering revocation, Alli's violation of his probation would be considered a Grade C violation. Upon a finding of a Grade C violation, the district court may revoke probation or supervised release, or extend the term of probation or supervised release and/or modify the conditions of supervision. Section 7B1.3(a)(2).

In the policy statement, terms of imprisonment are covered by § 7B1.4, and a Grade C violation with a criminal history category of I has a range of three to nine months. Application Note 1 states that the criminal history category to be used under this section "is the category determined at the time the defendant originally was sentenced to the term of supervision. The criminal history category is not to be recalculated because the ranges set forth in the Revocation Table have been designed to take into account that the defendant violated supervision."

All of the circuits which have considered this issue have concluded that the clear language of § 3565(a)(2) controls, and that upon resentencing, following revocation of probation, the court is limited to a sentence within the guidelines available at the time of the initial sentence. *See United States v. Von Washington,* 915 F.2d 390 (8th Cir. 1990); *United States v. Smith,* 907 F.2d 133 (11th Cir.1990); and *United States v. Foster,* 904 F.2d 20 (9th Cir.1990). We find these cases persuasive.

The government argues that unless the court on resentencing is allowed to make an upward departure from the guidelines, a defendant's misconduct in violating his probation will go unpunished. This argument was answered in *Smith, supra:*

This is not to say that post-sentencing conduct is irrelevant to probation revocation proceedings. Where revocation is not mandatory, the district court may certainly consider such conduct when deciding whether to revoke probation or to continue it, either on the same or different terms, *see id.* §§ 3563(c), 3565(a)(1). Furthermore, after revoking probation, the district court has discretion to impose a new sentence within the applicable range prescribed by law *i.e.,* statute and guidelines, at the time of the initial sentencing—in this case, within a range of four to ten months. Common sense suggests that the court ought to be able to consider the conduct giving rise to the revocation (i.e., post-sentencing conduct) in deciding what sentence to select within the guideline range or even whether to depart from the guidelines, provided the conduct of justifying departure (i.e., presentencing conduct upon which departure could have originally been based) was brought to the court's attention at the initial sentencing hearing. Similarly, where a term of supervised release is discretionary, *see* Sentencing Guidelines § 5D1.1(b), the court ought to be able to

consider the probation violation in deciding whether to impose such a term. And whether supervised release is discretionary or mandatory, *see id.* § 5D1.1(a), the court should be able to consider the violation in determining the conditions, and, within the range prescribed by law, the duration of the term, *see id.* § 5D1.2.

*Id.* at 135–36.

The appellant's conduct in violation of his probation results in his losing any credit for the 138 days he spent in community confinement at Troy House. Thus, the appellant's violation of probation does not go unpunished. In the initial sentence he was given a term of three years probation, six months of which was to be served in Troy House. Upon revocation and resentencing he could be sentenced from six to twelve months and then placed on supervised release, but his period of incarceration could not exceed the 12 month limit of the guidelines.

We are persuaded to this result by the clear language of 18 U.S.C. § 3565(a)(1) and by policy statement of the U.S. Sentencing Commission as found in Chapter 7, U.S.S.C. Guidelines Manual (Nov.1990). Under the statute, Alli could be sentenced to a maximum of 12 months because this was the maximum applicable to him under the guidelines at the time of initial sentencing. Appellant is entitled to 51 days credit against his new sentence for the time he spent in custody, March 15, 1989 to May 4, 1989. Although his sentence would be less under the policy statement, such statement was not effective at the time of resentencing, and we have referred to it only as an indication of the U.S. Sentencing Commission's thinking in the area.

SENTENCE VACATED, REMANDED FOR RESENTENCING.

NORTON, District Judge, dissenting:

The majority construes the probation revocation provisions of the Sentencing Reform Act to limit, with certain narrow exceptions, the sentence imposable upon revocation of probation to the maximum term of imprisonment within the guideline range applicable at the defendant's *initial sentencing.* This interpretation of the statute is at odds with the Sentencing Reform Act scheme taken as a whole, has no support in the legislative history, produces anomalous policy results, and may frustrate implementation of the policy statements on probation revocation recently issued by the Sentencing Commission.

While I recognize that the 18 U.S.C. § 3565(a)(2) phrase "any other sentence that was available under subchapter A at the time of the initial sentencing" can be read to mean any other sentence within the original guideline range, it is not the most straightforward reading of the statutory language. The plain language of the statute does not use the words "guideline sentence" or any similar *direct* reference to the guideline range that was available at the initial sentencing. The statute speaks directly to "any other sentence that was available under subchapter A," which appears to refer to any sentence of imprisonment (and/or fine) up to the statutory maximum. Subchapter A, section 3551(b) and sections 3559(a) and (b) set forth the authorized kinds of sentences for individuals, and set forth the maximum imprisonment sentence available for each offense, either by classification or reference to the existing code. Thus, the phrase, "any other sentence" should be interpreted to refer to any sentence up to the statutory maximum, and not any sentence available under the original guidelines sentence.

The relevant legislative history of section 3565(a)(2) appears, at first glance, to support either interpretation of the statute. The Senate Judiciary Committee report simply states that "[s]ection 3565(a) provides that if a defendant violates a condition of probation the court may … revoke probation and impose any other sentence which *could have been imposed at the time of the initial sentencing.*" (Emphasis added.) S.Rep. No. 225, 98th Cong., 1st Sess. 102 (1983), U.S.Code Cong. & Admin. News 1984, pp. 3182, 3285. Obviously, the report language is but a restatement of the statutory phrase "any other sentence that was available at the time of the initial sentencing." In the context of a 153–page,

extremely detailed, principal statement of Congressional intent surrounding the Sentencing Reform Act, this cursory explanation would not be unremarkable if it was intended that the statutory phrase would have its straightforward meaning of any other sentence statutorily authorized by the Act. In contrast, given the level of detail with which the report describes the expected guidelines sentencing scheme, if the Committee had intended the phrase "any other sentence that was available" to be qualified by the guideline range applicable at initial sentencing, surely it would have said that somewhere in the report, considering the profound policy significance of such a decision.

Moreover, when viewed in the context of the Sentencing Reform Act as a whole, it is incongruous to interpret the language to mean a sentence within the original guidelines sentencing range for several additional reasons. First, the Sentencing Reform Act specifically directs the Sentencing Commission to write guidelines or policy statements for probation revocation. *See* 28 U.S.C. § 994(a)(3). If the "any other sentence" language is construed to mean the original guidelines sentencing range, this directive to the Commission would be mere surplusage; *i.e.*, revocation guidelines would be unnecessary if the sentencing judge must refer back to the original guidelines sentencing range. Second, Congress could not have anticipated precisely what approach the Commission would take in writing guidelines. For example the Commission could have followed an approach that used an "in/out" line (a scheme that finds some descriptive support in the legislative history). Under that approach, certain offenses would be punished only by probation and others only by incarceration. If the Commission had used this approach and the guidelines for an offense called for probation, a subsequent violation of probation could not be punished by incarceration if "any other sentence" means the original guidelines sentence.

Looking at the existing guidelines scheme, a similar result could occur in some instances. For example, assume the first offense had a guidelines range of 0–6

months and the sentencing judge sentenced the defendant to two years probation with a condition that the defendant spend six months in a local jail. After service of the six months, the defendant violates probation. If "any other sentence" means the original guidelines sentencing range, the violation could not be punished by imprisonment because under 18 U.S.C. § 3585(b) a defendant must be given credit for any time spent in official detention when probation is revoked. Surely Congress could not have intended a statutory construction that would, in many instances, yield an inadequate sanction for the probation violation and, in some instances, a zero sanction.

Appellant's alternative approach, comparing the language in the last sentence of section 3565(a), actually shows why his construction of the 3565(a)(2) statutory provision is erroneous. Appellant correctly notes that the last sentence in section 3565(a) mandates revocation of probation for possession of a controlled substance and a sentence of *not less than one-third of the original sentence.* Considering that he was originally sentenced to a three-year term of probation, he argues (again correctly, I believe) that the statute requires a revocation sentence of at least one year imprisonment for possession of a controlled substance. That construction may have suited his case, for his original guideline range was 6–12 months, and he desires the top of the original guideline range to cap his revocation sentence. But, suppose his original guideline range had been 0–6 months (or any range the maximum of which is less than one-third of the probation term). Then, upon revocation of his three-year probation sentence, would he argue that the mandatory minimum sentence required by the last sentence of section 3565 is trumped by the language of subsection (a)(2) (and limited by the maximum imprisonment sentence within the original guideline range)? Yet, considering that the mandatory revocation/minimum one-third of original sentence language was a later-enacted provision (adopted as part of the anti-Drug Abuse Act of 1988), it seems highly unlikely that Congress would

have intended that it be limited by the previously existing language in subsection (a)(2). In other words, the majority opinion adopts a construction of these two related statutory provisions that puts them in conflict with one another. On the other hand, treating section 3565(a)(2) as referring to a statutorily available maximum sentence and the last sentence of section 3565(a) as referring to a minimum sentence renders the two provisions consistent with one another.

In sum, the majority opinion, instead of interpreting the statutory words according to their plain meaning, reads in an additional limitation not evident in the words themselves. It fails to construe related statutory provisions so that they will be consistent with one another, and it fails to consider the context of the Act as a whole, thereby rendering superfluous a specific directive to the Sentencing Commission mandating separate guidelines (or policy statements) for revocation of probation (and supervised release).